**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GOVERNMENT EMPLOYEES INSURANCE CO., et al.

Plaintiffs,

-against-                                    Docket No.: CV 12-02157
                                                          (KAM)(VMS)

LI-ELLE SERVICE, INC., et al.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION,**
**PURSUANT TO FED. R. CIV. P. 55(B)(2), FOR A DEFAULT JUDGMENT AGAINST**
**LI-ELLE SERVICE, INC.**

Respectfully submitted,

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, NY 11556-0926
Tel.: (516) 357-3000
Fax: (516) 357-3333
*Counsel for Plaintiffs,*
*Government Employees Insurance Co., GEICO*
*Indemnity Co, GEICO General Insurance Company and*
*GEICO Casualty Co.*

Of Counsel:
Barry I. Levy (BL 2190)
Michael A. Sirignano (MS 5263)
Justin A. Calabrese (JC 5436)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT FACTS........................................................................................................... 1

    I.      Pertinent Procedural History............................................................................... 1

    II.     GEICO's Allegations Against The Defaulting Defendant...................................... 2

THE STANDARDS ON THIS MOTION ............................................................................. 4

ARGUMENT ...................................................................................................................... 6

    I.      The Facts Set Forth In GEICO's Complaint Establish GEICO's
           Entitlement To A Default Judgment Against Li-Elle ........................................... 6

           A.     GEICO Should Be Awarded A Declaratory Judgment Against
                  Li-Elle ....................................................................................................... 6

           B.     GEICO Should Be Granted Default Judgment On Its Common
                  Law Fraud Claims Against Li-Elle ............................................................ 9

           C.     GEICO Should Be Granted Default Judgment On Its Unjust
                  Enrichment Claim Against Li-Elle .......................................................... 17

    II.     GEICO is Entitled to Pre-Judgment Interest on its Fraud Claims ....................... 17

CONCLUSION................................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

520 E. 81st St. Assocs. v. New York,
19 A.D.3d 24, 799 N.Y.S.2d 1 (1st Dept. 2005).........................................................................18

Agamede Ltd. v. Life Energy & Tech. Holdings, Inc.,
2007 U.S. Dist. LEXIS 4698 (E.D.N.Y. 2007) ..........................................................................5

AIU Insurance Co. v. Olmecs Med. Supply, Inc.,
2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. February 22, 2005) ................................9, 10, 11, 12

Allstate Ins. Co. v. Ahmed Halima,
2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. February 22, 2009).........................................12, 15, 16

Allstate Insurance. Co. v. Etienne,
2010 U.S. Dist. LEXIS 113995 (E.D.N.Y. 2010).......................................................................14

American Home Assurance Co. v. Morris Industrial Builders, Inc.,
192 A.D.2d 477, 597 N.Y.S.2d 27 (2d Dept. 1993) ...................................................................18

Au Bon Pain Corp. v. Artect, Inc.,
653 F.2d 61 (2d Cir. 1981) ...........................................................................................................5

Bsteem Holding Co. v. Stella,
1997 U.S. Dist. LEXIS 14010 (S.D.N.Y. 1997)...........................................................................4

by State Farm Mut. Auto. Ins. Co. v. Kalika,
2007 U.S. Dist. LEXIS 90322 (E.D.N.Y. 2007) ..........................................................................8

Cardinal Chem. Co. v. Morton Int'l, Inc.,
508 U.S. 83, 113 S. Ct. 1967, 124 L. Ed. 2d 1 (1993).................................................................6

Carriafielio-Diehl & Associates, Inc. v. D & M Elec. Contracting, Inc.,
12 A.D.3d 478, 784 N.Y.S.2d 617 (2d Dept. 2004) ...................................................................17

Channel Master Corp. v. Aluminum Ltd. Sales,
4 N.Y.2d 403, 176 N.Y.S.2d 259 (1958).....................................................................................9

E.R. Squibb & Sons, Inc. v. Lloyd's & Co.,
241 F.3d 154 (2d Cir. 2001) .........................................................................................................6

Golden Pacific Bancorp v. F.D.I.C.,
273 F.3d 509 (2d Cir. 2001) .......................................................................................................17

Gov't Emples. Ins. Co. v. Damien,
  2011 U.S. Dist. LEXIS 138365 (E.D.N.Y. 2011).........................................................5, 16, 17

Gov't Emples. Ins. Co. v. Hollis Med. Care, P.C.,
  2011 U.S. Dist. LEXIS 130721 ..........................................................................................14

Government Employees Insurance Company, et al. v. Infinity Health Products, Ltd., et al.
  10-CV-5611 (JG)(JMA)........................................................................................................8

Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.,
  973 F.2d 155 (2d Cir. 1992) .................................................................................................5

Kaye v. Grossman,
  202 F.3d 611 (2d Cir.2000) ................................................................................................17

Lazard Freres & Company v. Protective Life Insurance Company,
  108 F.3d 1531 (2d Cir. 1997) .............................................................................................15

Lerner v. Fleet Bank, N.A.,
  459 F.3d 273 (2d Cir. 2006) ...............................................................................................13

Lewis v. S.L. & E., Inc.,
  831 F.2d 40 (2d Cir. N.Y. 1987).........................................................................................18

Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.,
  801 F.2d 13 (2d Cir.1986) ..................................................................................................18

Maryland Casualty Co. v. Rosen,
  445 F.2d 1012 (2d Cir. 1971) ...............................................................................................6

Mason Tenders v. Taher Contracting Co., Inc.,
  2005 U.S. Dist. LEXIS 43364 (S.D.N.Y. 2005)...................................................................4

MBIA Ins. Corp. v. Royal Bank of Canada,
  2010 NY Slip Op 51490U (Sup Ct. Westchester Co. 2010) ...............................................15

NAP, Inc. v. Shuttletex, Inc.,
  112 F. Supp. 2d 369 (S.D.N.Y. 2000)..................................................................................7

Olin Corp. v. Consol. Aluminum Corp.,
  5 F.3d 10 (2d Cir. 1993).......................................................................................................6

Orion Pictures Corp. v. Showtime Networks, Inc.,
  4 F.3d 1095 (2d Cir. 1993) ...................................................................................................6

Oxford Health Plans (NY) Inc. v. Bettercare Health Care Pain Management & Rehab PC,
  305 A.D.2d 223 (1st Dep't 2003) ........................................................................................12

Perfect Dental, PLLC v. Allstate Insurance Company,
    538 F. Supp. 2d 543 (E.D.N.Y. 2007)...........................................................................................8

Schlaifer Nance & Co. v. Estate of Warhol,
    119 F.3d 91 (2nd Cir. 1997).........................................................................................................9

Schwimmer v. Allstate Ins. Co.,
    176 F.3d 648 (2d Cir. 1999) ......................................................................................................18

St. Paul Fire & Marine Ins. Co. v. Fox Insulation Co.,
    1999 WL 782333 (W.D.N.Y. September 30, 1999)...................................................................18

St. Paul Travelers Ins. Co. v. Nandi,
    2007 WL 1662050 (Sup. Ct. Queens Co. 2007)........................................................................16

State Farm Mut. Auto. Ins. Co. v. Cohan,
    2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009)..................................................................5, 8

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
    2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008) .................................................................12, 16

State Farm Mut. Auto. Ins. Co. v. Grafman,
    655 F. Supp. 2d 212 (E.D.N.Y. 2010).......................................................................................13

State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.,
    589 F. Supp. 2d 221 (E.D.N.Y. 2008).................................................................................12, 16

State Farm Mut. Auto. Ins. Co. v. Kalika,
    2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. 2006) .........................................................................8

State Farm Mutual Auto Ins. Co. v. Grafman,
    2009 U.S. Dist. LEXIS 86451 (E.D.N.Y. 2009) .............................................................8, 13, 14

Steinhardt Group, Inc. v. Citicorp,
    272 A.D.2d 255, 708 N.Y.S.2d 91 (1st Dep't 2000) .................................................................15

Tahini Investments, Ltd. v. Bobrowsky,
    99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984)..................................................................15

Terwilliger v. Terwilliger,
    206 F.3d 240 (2nd Cir. 2000) ....................................................................................................18

Tosto v. Zelaya,
    2003 U.S. Dist. LEXIS 8085 (S.D.N.Y. May 12, 2003)............................................................17

Transamerica Ins. Finance Corp. v. Fireman's Fund Ins. Co.,
    1992 U.S. Dist. LEXIS 17633 (S.D.N.Y. 1992)........................................................................15

Universal Acupuncture v. State Farm,
    196 F. Supp. 2d 378 (S.D.N.Y. 2002)....................................................................................7, 12

**STATUTES**

28 U.S.C. § 2201(a) ....................................................................................................................6

C.P.L.R. § 5001.........................................................................................................................18

C.P.L.R. §§ 5001(a), 5004.........................................................................................................18

C.P.L.R. § 5001(b) .....................................................................................................................18

**OTHER AUTHORITIES**

Local Civil Rule 55.2(c) ...............................................................................................................4

Fed. R. Civ. P. 9(b).....................................................................................................................12

Fed. R. Civ. P. 55(a) .....................................................................................................................1

Fed. R. Civ. P. 55(b)(1)(10).........................................................................................................4

Fed. R. Civ. P. 55(b)(2).............................................................................................................1, 4

Moore's Federal Practice § 55.20[4].............................................................................................4

## PRELIMINARY STATEMENT

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "Plaintiffs" or "GEICO"), respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 55(b)(2), for a default judgment against defendant Li-Elle Service, Inc. ("Li-Elle" or "the Defaulting Defendant").

The record is clear. Li-Elle was duly served with the Summons and Complaint in this action but has failed to appear and the Clerk of the Court, in accordance with Fed. R. Civ. P. 55(a), has entered Li-Elle's default. As set forth more fully below, given these facts and the facts established by Li-Elle's default, GEICO's Complaint sets forth, among other claims, legally sufficient claims against Li-Elle for a declaratory judgment and against Li-Elle for common law fraud and unjust enrichment.

Accordingly, GEICO respectfully requests that a default judgment be entered against Li-Elle as to each of these claims, including damages against Li-Elle plus interest, the costs and disbursements incurred in connection with the prosecution of this action, as well as such other and further relief as to the Court may seem just and proper.

## RELEVANT FACTS

### I.    Pertinent Procedural History

True and correct copies of the Amended Summons and Complaint (the "Complaint") were served on Li-Elle and all proof of service was subsequently filed with the Court via ECF. (See accompanying August 27, 2012 Declaration of Justin A. Calabrese ("Calabrese Decl."), Exhibit "A" and Exhibit "B" – Docket Entry No. 5).[1]   Due to Li-Elle' failure to appear in this

---

[1] Unless otherwise noted, all exhibits referenced herein are annexed to the Calabrese Decl., submitted herewith.

action, the Clerk of the Court, on GEICO's motion, entered Li-Elle' default on August 6, 2012. (See Exhibit "B" – Docket Entry No. 7).

## II.    GEICO's Allegations Against The Defaulting Defendant

The facts relating to the claims and the damages sought in this action are more fully set forth in the accompanying Calabrese Decl. and Declaration of Jennifer Fogarty ("Fogarty Decl."), together with the exhibits annexed thereto, including the Complaint in this action. GEICO respectfully refers the Court to those materials.

As set forth more fully in the Complaint, Li-Elle is a corporation that purportedly purchased durable medical equipment ("DME") and orthotic devices from various DME wholesale companies.[2] As part of a scheme that they orchestrated with the various DME wholesale companies, (hereinafter the "the Li-Elle Scheme"), Li-Elle purported to provide the DME and orthotic devices to GEICO insureds, and then submitted fraudulently-inflated claims to GEICO for reimbursement under New York's no-fault laws. Briefly:

(i)     Li-Elle obtained DME and orthotic devices from various DME wholesale companies, and, in turn, purported to provide the equipment to GEICO's insureds and submitted no-fault claims to GEICO for reimbursement.

(ii)    Pursuant to New York's no-fault laws, the maximum permissible charge for DME and orthotic devices is the fee payable for such DME and orthotic devices under the New York State Medicaid program at the time such DME and orthotic devices are provided. If the New York State Medicaid program has not established a fee payable for the specific item, then the fee payable shall be the lesser of the acquisition cost (i.e., the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50 percent, or the usual and customary price charged to the general public.

---

[2] Durable medical equipment generally consists of items that can withstand repeated use, and primarily consists of items used for medical purposes by individuals in their homes, such as bed boards, cervical pillows, orthopedic mattresses, electronic muscle stimulator units ("EMS units"), hot/cold packs, etc. Orthotic devices, a subgroup of DME, are instruments that are applied to the human body to align, support, or correct deformities, or to improve the movement of joints, spine, or limbs. These devices include such items as cervical collars (i.e., "whiplash" collars), ankle supports, wrist braces, and the like. See Exhibit "A" at ¶ 21.

(iii)     In order to fraudulently inflate the charges that it could submit to GEICO for reimbursement, Li-Elle, among other things, knowingly obtained fraudulent and inflated wholesale invoices from the various DME wholesale companies (who created the inflated wholesale invoices), and relied on those invoices to falsely represent that the DME and orthotic devices it purported to supply were expensive, high-end items. In fact, when Li-Elle did actually dispense DME and orthotic devices, it knowingly dispensed low-end, poor quality DME that sold at much lower amounts than the amounts represented in the bills submitted by Li-Elle – (i.e, their charges represented 150 percent of their purported acquisition cost) .

(iv)     As part of its efforts to mislead GEICO, Li-Elle issued payments to the various DME wholesale companies for the inflated invoice amounts in the form of checks that could be submitted to GEICO as proof of payment and to support its fraudulent claims for reimbursement. The check payments, however, were merely a façade, because the various DME wholesale companies issued "rebates," i.e., kickbacks, using check cashers and other methods to return a majority of the invoiced amounts to Li-Elle.

(v)     Through this method, Li-Elle, with the knowing aid and substantial assistance of the various DME wholesale companies, obtained payment from GEICO on its fraudulently inflated claims.

(vi)     Li-Elle also furthered their scheme by misrepresenting what it supplied. For example, it submitted bills for expensive "custom-fitted" orthotic devices when what actually was supplied, if anything, were inexpensive "one size fits all" orthotic devices.

(vii)     In addition, Li-Elle deliberately omitted any meaningful information regarding the DME and orthotic devices from the billing that it submitted to GEICO, including the manufacturer, make and model of the DME and orthotic devices that it purported to supply to insureds. This concealed the fact that what it actually supplied, if anything, was cheap, low quality DME and orthotic devices. By omitting this information, Li-Elle concealed that, in virtually every instance, it charged GEICO far more than the maximum permissible amounts for the DME and orthotic devices that were supplied, to the extent that any goods were supplied at all. Li-Elle also deliberately failed to provide GEICO and/or refused to respond to repeated requests made by GEICO seeking information such as the wholesale invoices, descriptions of goods provided (i.e., make and model), proof of payment, and additional information that would be necessary to determine whether the charges submitted by Li-Elle were legitimate.

(viii)     Beyond this, Li-Elle hired law firms that would routinely file expensive and time-consuming litigation against GEICO if the fraudulent charges were not promptly paid in full. The material misrepresentations, omissions and active concealment, along with the threat of litigation (against the backdrop of GEICO's statutory and contractual obligation to promptly and fairly process no-fault claims within 30 days), were designed to cause and did cause GEICO to justifiably rely on the fraudulent charges to its detriment. In reliance on the fraudulent charges, GEICO has paid Li-

3

Elle more than $412,000.00 ($262,213.00 in actual damages) and Li-Elle has pending, unpaid bills in excess of $204,000.00.[3]

(See Exhibit "A" and Declaration of Jennifer Fogarty at ¶¶ 7 and 10).

## THE STANDARDS ON THIS MOTION

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of the Court "must" enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by [the] rules." Id. As discussed above, Li-Elle' defaults already have been entered in this case.

In the rare case when the complaint seeks a sum certain, the Clerk of the Court may enter a judgment of default pursuant to Rule 55(b)(1)(10). See Moore's Federal Practice § 55.20[4] (Matthew Bender 3d Ed). In all other cases, the party seeking the default judgment must apply to the Court. See Fed. R. Civ. P. 55(b)(2); Mason Tenders v. Taher Contracting Co., Inc., 2005 U.S. Dist. LEXIS 43364 at *2 (S.D.N.Y. 2005). Since GEICO's damages are not for a liquidated amount, and also because GEICO seeks declaratory judgment in this action, this application is being made to the Court.

Where a defendant has not entered any appearance in an action, a plaintiff seeking a default judgment is not required to provide notice of its application. See Bsteem Holding Co. v. Stella, 1997 U.S. Dist. LEXIS 14010 at * 11 (S.D.N.Y. 1997). Even so, Local Civil Rule 55.2(c) does require that the papers in support of the present motion be mailed to Li-Elle at its last known addresses. As set forth in the Calabrese Decl., GEICO has complied with Local Civil Rule 55.2(c). See Calabrese Decl. at ¶ 12.

---

[3]     The Complaint alleges that GEICO suffered actual damages exceeding $412,000.00 and that Li-Elle has pending claims exceeding $355,000.00, however after additional information became available, GEICO determined that it suffered actual damages in the amount of $262,213.04, and since filing the Complaint, Li-Elle's pending claims decreased from $355,000.00 to $204,021.50.

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability and the Court accepts those allegations as true." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)(same). As such, once a defendant has defaulted, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." Agamede Ltd. v. Life Energy & Tech. Holdings, Inc., 2007 U.S. Dist. LEXIS 4698 at * 3 (E.D.N.Y. 2007)(internal quotations and citations omitted).

With respect to damages, State Farm Mut. Auto. Ins. Co. v. Cohan, 2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009) explained: "[A] default 'effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.'" Id. at *9-10 (quoting Cablevision Sys. New York City Corp. v. Abramov, 980 F. Supp. 107, 111 (E.D.N.Y. 1997)). Cohan continued: "The movant must prove that the 'compensation sought relate[s] to the damages that naturally flow from the injuries pleaded.'" Id. at *10 (quoting Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1993)).

While the Court may conduct a hearing under Rule 55(b)(2) of the Federal Rules of Civil Procedure, "[a]n evidentiary hearing is not required so long as there is a basis for the damages awarded[,]" such as "detailed affidavits and other documentary evidence." Id. (citing Transatlantic Marine Claims Agency v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) and Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991)(emphasis added). See also Gov't Emples. Ins. Co. v. Damien, 2011 U.S. Dist. LEXIS 138365 at * 22 (E.D.N.Y. 2011) adopted by 2011 U.S. Dist. LEXIS 136661 (E.D.N.Y. 2011)(determining default judgment damages based on plaintiffs' submissions, and noting that "A court must conduct an inquiry to ascertain the amount

of damages with reasonable certainty. ... The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, as long as the court has ensured that there was a basis for the damages specified in the default judgment.")(Internal quotations and citation omitted).

Below, GEICO sets forth that the facts pleaded are legally sufficient to state the causes of action asserted against Li-Elle. In addition, in the accompanying declarations and exhibits annexed thereto, it is respectfully submitted that GEICO sets forth not only an adequate basis for its claims, but also sufficient proof of its damages such that no hearing on damages is required. Accordingly, GEICO respectfully requests a default judgment against Li-Elle.

## ARGUMENT

**I.  The Facts Set Forth In GEICO's Complaint Establish GEICO's Entitlement To A Default Judgment Against Li-Elle**

### A.  GEICO Should Be Awarded A Declaratory Judgment Against Li-Elle

As an initial matter, a party seeking a declaratory judgment from a district court must show the existence of an "actual case or controversy." Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95, 113 S. Ct. 1967, 124 L. Ed. 2d 1 (1993); 28 U.S.C. § 2201(a). An "actual controversy" is "real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (internal citations omitted). Moreover, declaratory relief is appropriate: (i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings. See Maryland Casualty Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971); E.R. Squibb & Sons, Inc. v. Lloyd's & Co., 241 F.3d 154, 175 (2d Cir. 2001). A court has broad discretion to decide whether to render a declaratory judgment. See Orion Pictures Corp. v. Showtime Networks, Inc., 4 F.3d 1095, 1100 (2d Cir. 1993).

In deciding whether a plaintiff has stated a claim for declaratory relief, a federal court applies the state substantive law of the forum in which it sits. See NAP, Inc. v. Shuttletex, Inc., 112 F. Supp. 2d 369, 372 (S.D.N.Y. 2000); see also Universal Acupuncture v. State Farm, 196 F. Supp. 2d 378, 385 (S.D.N.Y. 2002).

GEICO's Complaint clearly establishes the existence of an actual case in controversy between GEICO and Li-Elle regarding fraudulent billing for DME and orthotic devices that allegedly have been provided to GEICO's insureds. Specifically, GEICO's request for declaratory relief is based upon the pervasive, fraudulent scheme whereby Li-Elle continues to seek payment for bills containing: (i) false and fraudulent misrepresentations to GEICO concerning the maximum permissible charges for the DME and orthotic devices, in order to obtain from GEICO payment under the New York no-fault laws to which it is not entitled; (ii) false and fraudulent charges for DME and devices that never were dispensed to insureds; and (iii) material omissions regarding the full particulars of the nature and/or extent of the DME and orthotic devices it purportedly supplied to insureds. (See Exhibit "A"). Because Li-Elle has defaulted and is deemed to have admitted these allegations, GEICO is entitled to a declaration that it is not obligated to pay outstanding claims by Li-Elle that currently exceed $204,000.00 (See, Declaration of Jennifer Fogarty at ¶10).

Furthermore, GEICO's Complaint establishes that, in accordance with the No-Fault Laws, and GEICO's standard office practices and procedures, GEICO either: (i) timely and appropriately denied the pending claims for No-Fault Benefits submitted through Li-Elle or (ii) timely issued requests for additional verification with respect to all of the pending claims for No-Fault Benefits submitted through Li-Elle. Li-Elle's repeated and intentional failure to respond to GEICO's requests has either (i) tolled GEICO's time to pay or deny the claims or (ii) constitutes

a breach of a policy condition precedent to coverage therefore relieving GEICO of any obligation to pay the claims.

Indeed, this Court has granted declaratory relief in a number of cases where the defendants were involved in similar schemes to defraud insurers by billing for charges that are not permissible under the no-fault laws. See, e.g., Cohan, 2009 U.S. Dist. LEXIS 125653 at *11-12 (granting declaratory relief to insurer relating to unpaid claims by dental professional corporations for services performed by independent contractors because under the no-fault laws, professional corporations have no right to bill for services of independent contractors), and cases cited therein; see also Perfect Dental, PLLC v. Allstate Insurance Company, 538 F. Supp. 2d 543, 549 (E.D.N.Y. 2007)(granting declaratory judgment in favor of insurers relating to unpaid claims by dental professional corporations for services performed by physical therapists who were independent contractors); see also State Farm Mut. Auto. Ins. Co. v. Kalika, 2006 U.S. Dist. LEXIS 97454 at *51-53 (E.D.N.Y. 2006) adopted by State Farm Mut. Auto. Ins. Co. v. Kalika, 2007 U.S. Dist. LEXIS 90322 (E.D.N.Y. 2007)(rejecting defendants' motion to dismiss insurer's claim for declaratory judgment that it was not obligated to pay outstanding claims for, among other things, medically unnecessary durable medical equipment); State Farm Mutual Auto Ins. Co. v. Grafman, 2009 U.S. Dist. LEXIS 86451 at *25-26 (E.D.N.Y. 2009)(rejecting defendants' motion to dismiss insurer's claim for declaratory judgment that it was not obligated to pay outstanding no-fault claims.)

More importantly, there is *recent* precedent in this jurisdiction that addresses almost identical factual schemes as the schemes identified in GEICO's complaint herein. See, Government Employees Insurance Company, et al. v. Infinity Health Products, Ltd., et al. 10-CV-5611 (JG)(JMA). In the Infinity case, this Court concluded that GEICO's complaint competently alleged and sufficiently established its entitlement to judgment on its declaratory

8

judgment claims, and its claims for fraud and unjust enrichment against the retail defendants. Even though the retail defendants defaulted, this Court properly recognized the pervasive nature of the fraudulent scheme outlined in the complaint and accordingly entered judgments against them. As such, a judgment should be granted to GEICO in this matter.

Accordingly, GEICO's Complaint sets forth all of the requisite elements to establish a proper claim for a declaratory judgment in the context of this matter, and the requested declaration should be granted.

**B.     GEICO Should Be Granted Default Judgment On Its Common Law Fraud Claims Against Li-Elle**

A claim for common law fraud in New York requires facts demonstrating that: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity (i.e., scienter), (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2nd Cir. 1997); see also Channel Master Corp. v. Aluminum Ltd. Sales, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 261 (1958) ("To maintain an action based on fraudulent representations, whether it be for the rescission of a contract or, as here, in tort for damages, it is sufficient to show that the defendant knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged").

AIU Insurance Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. February 22, 2005), is a similar case that provides a helpful overview for analysis of the fraud claim. In AIU Insurance Co., the Court denied motions to dismiss fraud claims by two medical providers. While medical providers were also defendants in AIU Insurance Co., the allegations in that case, like those here, included claims that retailers of medical supplies and wholesalers of medical supplies engaged in a fraudulent scheme to exploit the reimbursement

formulas for durable medical equipment under New York's No-Fault laws.  As here, the plaintiff insurance companies in AIU Insurance Co. claimed, among other things, that the retail defendants submitted fraudulent claims to them which included material misrepresentations as to the costs allegedly incurred by the retail defendants in purchasing items from their wholesalers. Id. at *11.  As in the present case, the fraudulent claims in AIU Insurance Co. were supported not only by vague wholesale invoices, but also by misleading generic prescriptions, and incomplete descriptions as to the equipment provided that was "completely meaningless in determining the true kind and quality of any specific item, the medical necessity of that item, or appropriate charges."  Id. at * 11.  Essentially the same modus operandi was employed by Li-Elle in this case.

In denying the motion to dismiss, the Court in AIU Insurance Co. noted that the plaintiffs included, in support of their RICO claims, a "detailed chart of 480 separate RICO events, including the Retail Defendant who submitted the claim, the claim number, the Supplies billed for, the prices charged, [and] the dates of the submissions," as well as lists noting the claims supported by the "prescriptions written by moving defendants ...."  Id. at 39-40. GEICO has submitted a similar chart in the present case.  See Exhibit "A", at Exhibit "1".  The Court in AIU Insurance Co. then referred to the chart in support of its finding that the common law fraud claims were sufficiently pleaded. Id. at * 46.  The Court also found that the complaint – which contained scienter allegations that were materially similar to GEICO's allegations in the present case – "set forth factual circumstances sufficient to indicate conscious behavior by defendants."  Id.

The Court in AIU Insurance Co. then noted the plaintiffs' allegations that they paid the retail defendants "in reliance on the 'facially valid' documents" submitted by them.  Id.  In support of their claim that they justifiably relied, the AIU Insurance Co. plaintiffs referred to claim documents representing that the costs the retail defendants purported to incur were legitimate, their statutory and

10

contractual obligation to promptly and fairly process claims within 30 days, and the defendants'
retention of two law firms that submitted cover letters indicating that they were "hired to collect
payment for Retail Defendants[,]" which carried an "implicit threat of litigation if the plaintiffs were
to fail to promptly pay Retail Defendants' charges in full."  Id. at *14.  GEICO has made
substantially similar allegations in this case. See Exhibit "A" at ¶¶ 43-47.

Given the facts set forth in GEICO's Complaint, and Li-Elle' admission to those facts as a
result of their default, the allegations in this Complaint against Li-Elle, as in AIU Insurance Co., set
forth all the elements to support Plaintiffs' common law fraud claim.  These are more particularly set
forth below.

First, GEICO's Complaint sets forth the actual misrepresentations contained in the billing
and supporting documents submitted by Li-Elle, as well as Li-Elle's material omission of facts.  For
example, the Complaint annexes a detailed chart (Exhibit "1" thereto) that chronicles more than two
thousand individual fraudulent claims wherein Li-Elle concealed the fact that the goods supplied, if
any, were cheap, low-quality goods even though it billed as if they were more expensive goods.  Li-
Elle also concealed the fact that it was rebated a large percentage of money that they represented to
have paid for supplies, and concealed the fact that they paid "kickbacks" to no-fault clinics to induce
them to write prescriptions: (i) for medically unnecessary supplies; (ii) for DME not covered by the
New York State Medicaid Fee Schedule; and (iii) in a generic way that would permit Li-Elle to
falsely purport to supply more expensive, high-end items.  In cases where the New York State
Medicaid program has prescribed a fee payable for a given item or class of item, Li-Elle
misrepresented the nature of the items actually prescribed and, in addition, misrepresented the item
that Li-Elle supplied, so as to claim entitlement to a higher fee payable.  In cases where the New
York State Medicaid program has not prescribed a fee payable for a given item or class of item, Li-

Elle deliberately misrepresented that their charges for DME and orthotic devices did not exceed the permissible charge under the applicable regulatory scheme, i.e., the lesser of its acquisition cost plus 50 percent or the usual and customary price charged to the general public, and misrepresented that its charges represented in its bills were the result bona fide arms-length transactions between Li-Elle and its wholesalers. See Exhibit "A" at ¶¶ 36-47.

These categories of misrepresentations clearly establish fraud by Li-Elle. See AIU Insurance Co., supra; see also, e.g., Universal Acupuncture Pain Services, P.C. v. State Farm Mutual Automobile Ins. Co., 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002)(fraud claim recognized where a professional corporation falsified records to indicate that it provided medically necessary treatment); Oxford Health Plans (NY) Inc. v. Bettercare Health Care Pain Management & Rehab PC, 305 A.D.2d 223, 224 (1st Dep't 2003)(claims of fraud properly premised on misrepresentations as to the necessity of the services and the actual performance of the services); Allstate Ins. Co. v. Ahmed Halima, 2009 U.S. Dist. LEXIS 22443 at *23 (E.D.N.Y. February 22, 2009)(facts indicating submission of boilerplate letters of medical necessity, i.e., undated, unsigned or signed with irregular signatures and containing identical language, along with doctor's report and bills for performance and interpretation of medially unnecessary CPT and J-Tech tests sufficient to state fraud and unjust enrichment claims); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156 at *52 (E.D.N.Y. 2008)(same re: CPT tests); State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C., 589 F. Supp. 2d 221, 235-237 (E.D.N.Y. 2008)(fraud claim sufficient where billing misrepresented level of service to inflate charges, "unbundled" charges to charge beyond maximum amount, and misrepresented medical necessity for tests).

Second, GEICO's Complaint establishes scienter. While "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally" (Fed. R. Civ. Pro. 9(b)), plaintiffs

must allege facts that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)(quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)(internal quotation marks and citation omitted in original)). Further, "'[t]he requisite "strong inference" of fraud may be established either: (i) by alleging facts to show that defendants had both motive and opportunity to commit fraud; or (ii) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-291 (2d Cir. N.Y. 2006) (citation omitted); see also State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 227 (E.D.N.Y. 2010).

Although GEICO need only plead facts showing that Li-Elle either had both the motive and opportunity to commit fraud or facts demonstrating strong circumstantial evidence of conscious misbehavior or recklessness, the Complaint pleads facts establishing scienter through either standard. In fact, Grafman is a factually similar case, in which the Court found a "strong inference of fraudulent intent" (as to the mail fraud allegations in the RICO claim) in almost the same circumstances. Id., 655 F. Supp. 2d at 228. In particular, Grafman held that plaintiffs' allegations in the complaint that the retail defendants "repeatedly sought reimbursement for medical treatment, tests and durable medical equipment at artificially high prices or for equipment or tests that were not medically necessary or, in some cases, never performed at all, shows intentional misbehavior." Id.

Here, motive and the opportunity to commit fraud is demonstrated by the fact that Li-Elle, in cooperation with various DME wholesale companies, not only had "likely prospect of achieving concrete benefits" by their scheme, but through a carefully constructed, sophisticated fraudulent scheme, actually did realize "concrete benefits" – recovering more than $262,000.00 from GEICO. (See Fogarty Declaration at ¶ 7).

In addition, the facts demonstrate strong circumstantial evidence of conscious misbehavior or recklessness. The Complaint and exhibits annexed thereto, for instance, outline a scheme in which Li-Elle misrepresented, among other things, the goods that it supplied and how much those goods cost them. Not only did Li-Elle misrepresent the goods purportedly dispensed and its costs for such items, but Li-Elle (i) deliberately failed to provide GEICO with any identifying information as to the goods supplied and (ii) failed to submit proof of payment to GEICO demonstrating how much Li-Elle purportedly paid for the goods – despite GEICO's repeated requests for additional verification. In the meantime, continued to submit claims that had to be paid or denied within 30 days and filed hundreds of lawsuits seeking reimbursement on the fraudulent claims. Thus, GEICO's payment and resulting damages were reasonably foreseeable. See Exhibit "A" at ¶¶ 43-47. These circumstances, at a minimum, indicate conscious behavior evincing the intent to defraud GEICO. See Grafman, supra; see also Gov't Emples. Ins. Co. v. Hollis Med. Care, P.C., 2011 U.S. Dist. LEXIS 130721 at fn. 11 (E.D.N.Y. 2011)(scienter sufficiently pleaded where defendants used professional corporation as a vehicle to submit fraudulent claims and managed the professional corporation so as to maximize the number of fraudulent claims that could be submitted); Allstate Insurance. Co. v. Etienne, 2010 U.S. Dist. LEXIS 113995 at * 30 (E.D.N.Y. 2010)(scienter pleaded where the medical provider defendants knowingly conducted and/or participated, directly or indirectly, in the conduct of the of the fraudulent enterprise, where the defendants benefitted from each others' participation in the scheme and where the defendants caused fraudulent bills to be submitted to Allstate).

Third, the allegations in the Complaint more than sufficiently allege that GEICO justifiably and reasonably relied on the claim documents submitted by Li-Elle. A plaintiff satisfies the justifiable reliance element sufficient to state a fraud claim so long as its reliance was not so "utterly unreasonable, in light of the information open to [it], that the law may properly say that [its] loss is

[its] own responsibility." Transamerica Ins. Finance Corp. v. Fireman's Fund Ins. Co., 1992 U.S. Dist. LEXIS 17633 at * 23 (S.D.N.Y. 1992). In addition, because the representations and/or omissions are matters that were within the exclusive knowledge of Li-Elle, it cannot challenge the reasonableness of GEICO's reliance. See Lazard Freres & Company v. Protective Life Insurance Company, 108 F.3d 1531, 1542 (2d Cir. 1997)(interpreting New York Law and citing Mallis v. Bankers Trust Company, 615 F.2d 68, 80 (2d Cir. 1980)(when matters are within the exclusive knowledge of the defendants, the plaintiff may rely on the representations "without prosecuting an investigation" to ascertain the truth)  See also Tahini Investments, Ltd. v. Bobrowsky, 99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984); Steinhardt Group, Inc. v. Citicorp, 272 A.D.2d 255, 257, 708 N.Y.S.2d 91, 93 (1st Dep't 2000); MBIA Ins. Corp. v. Royal Bank of Canada, 2010 NY Slip Op 51490U at *39-40 (Sup Ct. Westchester Co. 2010).

The Complaint here describes how GEICO justifiably and reasonable relied on the charges contained in Li-Elle's bills which represented that they were the products of legitimate acquisition costs, times 50 percent when in fact, they were not. See Exhibit "A" at ¶¶ 43-47. Indeed, pursuant to Section 403 of the New York State Insurance Law, all claim forms are required to contain a notice that provides, "in substance", the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime ... .

Id. Thus, Li-Elle knew that every claim form they signed and submitted, in essence, verified that the information they provided was truthful and that the submission of any materially false information or concealment was a crime.

Courts have regularly found that insurers may justifiably rely on claims forms submitted in support of reimbursement under New York no-fault laws. See, e.g., Halima, supra, 2009 U.S. Dist.

LEXIS 22443 at *15-16. In Halima, for instance, this Court found that plaintiffs sufficiently pleaded justifiable reliance where defendants fraudulently submitted "thousands of insurance claims" resulting in plaintiffs' payment of over $1,000,000.00 in unnecessary reimbursements. Id. at *15. The district court found that plaintiffs sufficiently pleaded that they could not detect the defendants' fraud because the physicians and licensed medical services corporations submitted facially valid insurance claims upon which plaintiffs reasonably relied. Id. See also Damien, supra at * 9 - * 13 (granting default judgment to insurers alleging fraudulent no-fault billing scheme, and noting that the insurers established "reasonable reliance by including in their complaint an explanation of the statutory and contractual requirements obligating [them] to respond promptly to facially valid claims submitted under the statutory scheme"); Liguori, supra, 589 F. Supp. 2d at 227, 238 (State Farm's allegations that it "was under statutory and contractual obligations to promptly and fairly process claims within 30 days, and therefore relied on [alleged misrepresentations within defendants' no-fault billing] and the facially valid documents defendants submitted in support of the charges" were sufficient to plead reliance); CPT Med. Servs., supra, 2008 U.S. Dist. LEXIS 71156 at *43 52 (E.D.N.Y. 2008)(same); St. Paul Travelers Ins. Co. v. Nandi, 2007 WL 1662050 at *6 (Sup. Ct. Queens Co. 2007) (allegations that plaintiffs paid money to ineligible professional corporations in reliance on the representation that the PCs were valid and entitled to receive no-fault benefits sufficiently stated reliance).

Accordingly, in the present case Li-Elle's purported owner verified that the charges submitted by Li-Elle were true, accurate and the result of bona fide, arms-length transactions between Li-Elle and various DME wholesale companies, and GEICO justifiably relied on the fraudulent misrepresentations contained in the facially-valid claim forms. Beyond this, as noted above, GEICO's reliance was all the more reasonable because Li-Elle took steps to conceal their

fraud – for example, by refusing to provide wholesale invoices, refusing to submit proof of payment for the goods and refusing to disclose the rebates that they received. See Exhibit "A" at ¶ 44.

Finally, GEICO has established the requisite injury. The Complaint alleges that GEICO was injured as a result of the fraudulent scheme perpetrated by Li-Elle in that it paid more than $262,000.00 to Li-Elle, reasonably believing that it had an obligation to do so. See Exhibit "A" at ¶¶ 43-47; see also accompanying Declaration of Jennifer Fogarty at ¶¶ 7 and 10 and Exhibit "1" annexed thereto (setting forth the actual amounts GEICO paid to Li-Elle that it seeks to recover in this action - $262,213.04); Damien, supra at * 11 (insurers sufficiently pleaded damages to support default judgment on fraud claims by "alleging a total amount of benefits paid out to the fraudulent entities, as well as attaching to their complaint lists of many of the claims paid out.")

### C.   GEICO Should Be Granted Default Judgment On Its Unjust Enrichment Claim Against Li-Elle

GEICO's Complaint also establishes its entitlement to recover the money paid to Li-Elle based on a claim for unjust enrichment. Recovery for unjust enrichment requires allegations establishing that: (i) Li-Elle was enriched; (ii) at GEICO's expense; and (iii) that equity and good conscience require restitution. See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.2000); Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001); see also Carriafielio-Diehl & Associates, Inc. v. D & M Elec. Contracting, Inc., 12 A.D.3d 478, 784 N.Y.S.2d 617, 618 (2d Dept. 2004). Given the allegations detailing the massive fraudulent scheme committed by Li-Elle against GEICO resulting in the payment of more than $412,000.00 to Li-Elle, GEICO has more than sufficiently established a claim for unjust enrichment. See, Fogarty Declaration at ¶ 7.

### II.   GEICO is Entitled to Pre-Judgment Interest on its Fraud Claims

GEICO is entitled to pre-judgment interest against Li-Elle on its fraud claims. See Tosto v. Zelaya, 2003 U.S. Dist. LEXIS 8085, at *23-*24 (S.D.N.Y. May 12, 2003). Indeed, under New

17

York law, an award of pre-judgment interest on damages for fraud is mandatory.  See Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13, 28 (2d Cir.1986).

The award of prejudgment interest is a substantive issue, governed here by the state substantive law of the forum state in which the federal court sits, namely New York law. See Terwilliger v. Terwilliger, 206 F.3d 240, 249 (2nd Cir. 2000)(applying state law to the question of prejudgment interest in a diversity case); Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999) (same).  The source of the right to pre-judgment interest in New York is set forth in N.Y. C.P.L.R. § 5001. Specifically, C.P.L.R. § 5001(b) states that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed". Furthermore, pre-judgment interest is calculated at the non-compounded rate of nine percent per annum. N.Y. C.P.L.R. §§ 5001(a), 5004; see 520 E. 81st St. Assocs. v. New York, 19 A.D.3d 24, 799 N.Y.S.2d 1, 4 (1st Dept. 2005)(as a general rule, statutory pre-judgment interest rate is not compounded). Here, it is suggested that interest be calculated from the first day following the year in which the payments were made on the fraudulent claims by GEICO to the Defendants. St. Paul Fire & Marine Ins. Co. v. Fox Insulation Co., 1999 WL 782333 at *1 (W.D.N.Y. September 30, 1999); American Home Assurance Co. v. Morris Industrial Builders, Inc., 192 A.D.2d 477, 597 N.Y.S.2d 27, 28 (2d Dept. 1993)(applying pre-judgment interest according to dates when payments made by insurer to its insured). This method is consistent with the purpose of pre-judgment interest, which is to "compensate plaintiffs for the use of funds that were wrongfully diverted by the defendant." Lewis v. S.L. & E., Inc., 831 F.2d 40 (2d Cir. N.Y. 1987). The basis for GEICO's proposed pre-judgment interest calculation under this method (a method more conservative than that permitted under the CPLR) totals $100,853.78, and is described in Exhibit "C" attached to the Calabrese Declaration.

## CONCLUSION

For the reasons stated herein, GEICO's application for a default judgment against Li-Elle should be granted as to its claims for a declaratory judgment, common law fraud and unjust enrichment.

Dated: Uniondale, New York
       August 27, 2012

Respectfully submitted,

RIVKIN RADLER LLP

By:_____
       Barry I. Levy (BL 2190)
       Michael A. Sirignano (MS 5263)
       Justin A. Calabrese (JAC 5436)
       926 RXR Plaza
       Uniondale, NY 11556-0926
       Tel.: (516) 357-3000
       Fax: (516) 357-3333

       *Counsel for Plaintiffs, Government Employees*
       *Insurance Co., GEICO Indemnity Co, GEICO*
       *General Insurance Company and GEICO*
       *Casualty Co.*